UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 02-00945 MMM |
| Plaintiff, | ) ORDER GRANTING MOTION TO DISMISS DEFENDANT'S PETITION FOR RELIEF PURSUANT TO WRIT OF ERROR CORUM NOBIS AND DISMISSING PETITION WITH LEAVE TO AMEND |
| vs. | |
| OPHELIA ABRAMIAN, | |
| Defendant. | |

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On October 28, 2002, Abramian pleaded guilty to five counts of bank fraud in violation of 18 U.S.C. § 1344.[1] On February 3, 2003, Abramian was sentenced to five months in custody, which was a time served sentence, five months of home detention, and three years of supervised release. She was ordered to pay $18,997.49 in restitution and a $100 special assessment.[2] On

---

[1] Minutes of Change of Plea Hearing, Docket No. 23 (Oct. 28, 2002); Petition for Writ of Error Coram Nobis ("Petition"), Docket No. 33 (Mar. 24, 2014) at 2.

[2] Minutes of Sentencing, Docket No. 27 (Feb. 3, 2003) at 1-2.

March 24, 2014, Abramian filed a petition for writ of error coram nobis. On April 25, 2014, the government filed a motion to dismiss Abramian's petition.[3]

Ophelia Abramian entered the United States in 1997, and was granted asylum in 1998.[4] Abramian states that following her sentencing, she was taken into custody by immigration authorities preparatory to removal.[5] Abramian hired an immigration lawyer, and was released in April 2004.[6] Her asylum status has now been revoked because her sentence qualifies as an "aggravated felony."[7]

Abramian seeks to vacate her conviction, plead guilty to the same offenses, and be ordered to pay restitution of less than $10,000.[8] She contends that her criminal attorney violated her Sixth Amendment right to effective assistance of counsel by failing to advise that if the amount of restitution order was $10,000 or more, the crime would qualify as an aggravated felony and lead to her removal.[9] Abramian concedes that the court advised her she might be subject to removal or deportation as a consequence of her guilty plea. Her plea agreement also advised her of this possibility. She contends, however, that had she known a restitution amount of $10,000 or more would result in her removal, she would have asked her attorney to negotiate a plea to a crime that would not have been classified as an aggravated felony, consulted with an immigration attorney, or gone to trial.[10]

---

[3] Motion to Dismiss ("MTD"), Docket No. 37 (Apr. 25, 2014).

[4] Petition at 3.

[5] Declaration of Ophelia Abramian ("Abramian Decl."), Docket No. 35 (Mar. 24, 2014) at 2.

[6] *Id*.

[7] *Id*.

[8] Petition at 3, 6.

[9] *Id*. at 11; Abramian Decl. at 3.

[10] *Id*.

## II. DISCUSSION

### A.     Legal Standard Governing Coram Nobis Petitions

The Supreme Court and the Ninth Circuit have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is available. In *United States v. Morgan*, 346 U.S. 502, 511 (1954), the Supreme Court characterized the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice." See also *Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("'[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate,'" quoting *United States v. Smith*, 331 U.S. 469, 475 n. 4 (1947)). The Ninth Circuit has also described the writ as "extraordinary," *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987), and as a mechanism to be "used only to review errors of the most fundamental character," *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002).

Consistent with the extraordinary nature of coram nobis relief, the *Hirabayashi* court adopted the following framework for deciding when the writ should issue:

> "[A] petitioner must show the following to qualify for coram nobis relief: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi*, 828 F.2d at 604.

See also *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005); *Matus-Leva*, 287 F.3d at 760. Because these requirements are conjunctive, failure to satisfy any one of them is fatal. See, e.g., *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991).

### B.     Whether the Legal Basis for Abramian's Coram Nobis Petition is Cognizable

#### 1.     Whether *Padilla v. Kentucky* Is Retroactive

The parties' briefs focus primarily on the fourth element of the *Hirabayashi* test. Abramian contends this element is satisfied because the Sixth Amendment right to counsel is most fundamental right, and an attorney's failure to advise of possible immigration consequences is a

cognizable basis for asserting ineffective assistance of counsel following the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010).[11] The government argues that Abramian is unable to satisfy the fourth *Hirabayashi* element because her conviction predates *Padilla* by seven years, and *Padilla* is not retroactive.[12]

The Sixth Amendment guarantees all criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the right to counsel is the right to the effective assistance of counsel,'" quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)). An individual no longer in custody may utilize a petition for writ of coram nobis to attack her conviction on ineffective assistance of counsel grounds. *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). Such an attack satisfies the fundamental error requirement of *Hirabayashi*. See *Kwan*, 407 F.3d at 1014 ("Kwan may satisfy the fundamental error requirement by establishing that he received ineffective assistance of counsel").

In 2010, the Supreme Court held in *Padilla v. Kentucky* that counsel's failure to advise a client of the risk that his or her conviction might result in removal was a cognizable basis for an ineffective assistance of counsel claim under *Strickland*. 559 U.S. at 374 ("[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation"). Prior to *Padilla*, courts held that the failure to advise a client of immigration consequences was not a cognizable ground upon which to claim ineffective assistance of counsel because immigration consequences were considered only collateral matters, "i.e., those matters not within the sentencing authority" of the trial court. *Padilla*, 559 U.S. at 364. See *Chaidez v. United States*, 133 S.Ct. 1103, 1100 1109 (2013) (observing that, prior to *Padilla*, all ten federal appellate courts to consider the question, and appellate courts in thirty states, had concluded that counsel's failure to inform a defendant of the collateral consequences of a guilty plea was not a violation of the Sixth Amendment, while only two state courts had reached a contrary conclusion).

---

[11]Petition at 6, 11.

[12]MTD at 6.

4

In *Chaidez*, the Supreme Court held that *Padilla* did not have retroactive effect, and thus that a person whose conviction became final before *Padilla* was decided could not benefit from the rule it enunciated. *Id.* at 1113. The case concerned Roselva Chaidez, who had immigrated to the United States from Mexico and become a lawful permanent resident. *Id.* at 1105. About twenty years later, she pled guilty to an aggravated felony, which subjected her to mandatory removal. *Id.* at 1106. Chaidez alleged that her attorney had not advised her of the deportation consequences of her plea. *Id.* In an effort to avoid removal, Chaidez filed a petition for writ of coram norbis seeking to overturn her conviction on the ground that her former attorney's failure to advise her of the immigration consequences of her guilty plea constituted ineffective assistance of counsel under the Sixth Amendment. *Id.* While her case was pending, the Supreme Court decided *Padilla*. *Id.* Chaidez was unable to benefit, however, as the *Chaidez* Court held that under *Teague v. Lane*, 489 U.S. 288 (1989), *Padilla* announced a "new rule" rather than "'merely an application of the [*Stricland*] principle that governed' a prior decision to a different set of facts." 133 S.Ct. at 1107 (quoting *Teague*, 489 U.S. at 307). As a consequence, the Court held, the decision did not apply retroactively to criminal convictions such as Chaidez's that were final.

Because *Padilla* is not retroactive, Abramian cannot satisfy the fourth element of the *Hirabayashi* test to the extent she relies on that case. See *United States v. Martinez*, No. 2:99–cr–038–KJD–RJJ, 2013 WL 2452204, *3 (D. Nev. May 28, 2013) ("*Chaidez* similarly prevents Defendant from benefitting from the *Padilla* holding. Defendant's conviction became final years before *Padilla* was decided. *Chaidez* held that *Padilla* is not retroactive. The Court, therefore, cannot grant Defendant's Motion for Writ of *Coram Nobis*"); *United States v. Madrigal-Maya*, No. 92–MJ–8003–(PCL)–3, 2013 WL 1289265, *4 (S.D. Cal. Mar. 25, 2013) (denying a writ of coram norbis because, *inter alia*, *Padilla* does not apply retroactively to petitioner's ineffective assistance of counsel claim). See also *United States v. Flores*, No. 89 CR 0056 L, 2013 WL 5670924, *2 (S. D. Cal. Oct. 15, 2013) ("Defendant's request for this Court to vacate his prior conviction rests on the retroactive applicability of *Padilla* to overcome his untimeliness. In light of the recent holding in *Chaidez*, this Court finds that Defendant cannot avail himself of the writ of coram nobis to attack his prior conviction because he filed his writ two

decades after his conviction, and the relief he seeks is unavailable in light of the non-retroactivity of *Padilla*").

### 2. Whether *United States v. Kwan* Is Retroactive

In her opposition, Abramian argues that *Chaidez* is distinguishable because she does not contend her counsel failed to inform her of the immigration consequences of her plea, but only that he "less than [fully] informed or misinformed" her about the subject.[13] She contends her criminal lawyer should have negotiated more effectively and sought restitution in a lower amount.[14] In *Kwan*, a 2005 Ninth Circuit decision, the court distinguished an attorney's failure to advise a client of the immigration consequences of a conviction – which was not then a cognizable basis for an ineffective assistance of counsel claim under *Strickland* – from situations in which counsel effectively misled a client about the immigration consequences of a conviction. The court held the latter claim was cognizable under *Strickland*. 407 F.3d at 1015. Kwok Chee Kwan, a lawful permanent resident, had been indicted on two counts of bank fraud. *Id*. at 1008. When considering whether to plead guilty, he asked his defense attorney whether doing so would lead to his deportation. *Id*. The attorney assured Kwan that although there was a possibility Kwan would be deported, he did not believe, based on his knowledge and experience, that it was a serious possibility. *Id*. at 1009. The court found the attorney's conduct objectively unreasonable under *Strickland* because "counsel did not merely refrain from advising Kwan regarding the immigration consequences of his conviction, but, instead, responded to Kwan's specific inquiries

---

[13]Opposition to Government's Motion to Dismiss, Docket No. 38 (Apr. 28, 2014) at 1. While it is possible that prior counsel minimized the likelihood of immigration consequences by failing to advise Abramian that her conviction constituted an aggravated felony, the precise contours of any affirmative misadvice prior counsel gave do not appear to be adequately alleged in Abramian's petition. At oral argument, Abramian's counsel represented that he believed prior counsel told Abramian that although she faced immigration consequences, everything would probably be fine. While this statement brings the facts of Abramian's case closer to the facts of *Kwan*, there is no allegation of this in the petition.

[14]*Id*.

6

regarding the immigration consequences of pleading guilty and purported to have the requisite expertise to advise Kwan on such matters." *Id.* at 1015.

Apparently anticipating Abramian's argument, the government's motion advances several theories as to why *Kwan* – which, like *Padilla*, was decided after Abramian's conviction – is not retroactive.[15] First, the government contends that under *Chaidez*, *Kwan* cannot be applied retroactively because the Court suggested that its retroactivity analysis applied to non-advice and misadvice alike.[16] The *Chaidez* Court stated that *Padilla*'s rule constituted a new obligation precisely because it rejected the "'categorica[l] remov[al]' of advice about a conviction's non-criminal consequences – including deportation – from the Sixth Amendment's scope. It was *Padilla* that first . . . made the *Strickland* test operative . . . when a criminal lawyer *gives (or fails to give)* advice about immigration consequences." *Chaidez*, 133 S.Ct. at 1110 (quoting *Padilla*, 559 U.S. at 366 (emphasis added)). The *Padilla* Court similarly appeared to reject any such distinction, stating that "there is no relevant difference 'between an act of commission and an act of omission' in this context." *Padilla*, 559 U.S. at 370 (quoting *Strickland*, 466 U.S. at 690).

Other language in *Chaidez* appears to recognize a distinction between omission and commission, however. The *Chaidez* Court cited *Kwan* as one of "a minority of [state and federal decisions that] recognized a separate rule for material misrepresentations," but stated that "[t]hat limited rule [did] not apply to Chaidez's case." *Id.* at 1112. Because the *Kwan* rule "lived in harmony with the exclusion of [ineffective assistance] claims like [Chaidez's] from the Sixth Amendment," the Court concluded that that reinforced the conclusion that *Padilla* had articulated a new rule. Based on the *Chaidez* Court's discussion of *Kwan*, it is unclear that *Kwan* cannot be given retroactive effect.

---

[15]Motion at 7 n. 2.

[16]*Id.*

7

The government alternatively urges that the court analyze *Kwan* under the *Teague* framework to determine if it stated a new rule of law.[17] As noted, the retroactive application of case law is governed by the rule set forth in *Teague*, 489 U.S. 288. Under *Teague*, retroactivity turns on the novelty of a decision's holding. *Chaidez*, 133 S.Ct. at 1107 ("*Teague* makes the retroactivity of our criminal procedure decisions turn on whether they are novel"). If a decision announces a new rule, "a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Id.* Only if the court applies a settled rule "may a person avail herself of the decision on collateral review." *Id.* "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis original). "[A] holding is not so dictated . . . unless it would have been 'apparent to all reasonable jurists.'" *Chaidez*, 133 S.Ct. at 1107 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)). See also *Butler v. McKellar*, 494 U.S. 407, 414 (1990) ("The 'new rule' principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions"); *id.* at 417 (Brennan, J. dissenting) ("A legal ruling sought by a federal habeas petitioner is now deemed 'new' as long as the correctness of the rule, based on precedent existing when the petitioner's conviction became final, is 'susceptible to debate among reasonable minds'" (citation omitted)); *Sawyer v. Smith*, 497 U.S. 227, 234 (1990) ("The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered").

A case does not apply a new rule, however, "when it is merely an application of the principle that governed a prior decision to a different set of facts." *Chaidez*, 133 S.Ct. at 1107 (quoting *Teague*, 489 U.S. at 301 (internal quotation marks and brackets omitted)). See *id.* ("[G]arden-variety applications of the test in *Strickland v. Washington* for assessing claims of ineffective assistance of counsel do not produce new rules").

---

[17]*Id.* at 8 n. 2.

8

The Second Circuit recently considered the retroactivity of a holding that it is objectively unreasonable under *Strickland* for counsel to misadvise a client concerning the immigration consequence of a guilty plea. *Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014). Stephen Kovacs, an Australian national who had become a permanent resident of the United States, was charged with wire fraud and conspiracy to commit wire fraud in 1996, and instructed his attorney to "negotiate a plea that would have no immigration consequences." *Id.* at 48. In 1999, after his lawyer advised that a plea to misprison of felony would not impact his immigration status, Kovacs entered such a plea. He was ultimately sentenced in 2001. *Id.* The following year, the Second Circuit decided *United States v. Couto*, 311 F.3d 1179 (2d Cir. 2002), which held that affirmatively misrepresenting the deportation consequences of a guilty plea falls outside the range of professional competence under *Strickland*. 744 F.3d at 50.

The *Kovacs* court held that by the time Kovacs' conviction became final, the *Couto* rule had been indicated, and was merely awaiting a case in which to be pronounced. Thus, the court concluded, it was not a "new rule" under *Teague*. *Id.*; *id.* at 51 ("At the time Kovacs' conviction became final, no reasonable jurist could find a defense counsel's affirmative misadvice as to the immigration consequences of a guilty plea to be objectively reasonable").

The court finds *Kovacs* highly persuasive in assessing whether *Kwan* can apply retroactively. *Kwan* was decided three years after *Couto*. The *Kwan* court relied heavily on *Couto* in holding that an attorney who misleads his client about the immigration consequences of a conviction acts in an objectively unreasonable fashion under *Strickland*. 407 F.3d at 1015. Other federal and state courts had also recognized, prior to Abramian's conviction in this case, that affirmative misrepresentations by counsel concerning the immigration consequences of a guilty plea could, under certain circumstances, constitute ineffective assistance of counsel. See *Couto*, 311 F.3d at 187-88 (collecting cases); *Downs-Morgan v. United States*, 765 F.2d 1534, 1540-41 (11th Cir. 1985) (holding that an affirmative misrepresentation regarding the immigration consequences of a plea, coupled with a likelihood that petitioner would be imprisoned and/or executed followed deportation, constituted ineffective assistance of counsel); *United States v. Briscoe*, 432 F.2d 1351, 1353-54 (D.C. Cir. 1970) ("Under appropriate circumstances the fact

that a defendant has been misled as to [the] consequence of deportability may render his guilty plea subject to attack. . . . Calculations of the likelihood of deportation may thus rightly be included in the judgment as to whether an accused should plead guilty, and any actions by Government counsel that create a misapprehension as to that likelihood may undercut the voluntariness of the plea"); see also *Sandoval v. I.N.S.*, 240 F.3d 577, 578–79 (7th Cir. 2001) (reasonable reliance on counsel's erroneous advice regarding deportation can render a guilty plea involuntary); *United States v. Russell*, 686 F.2d 35, 40-41 (D.C. Cir. 1982) (noting that the provision of misleading information by the prosecution concerning the immigration consequences of a guilty plea may render the plea invalid); *United States v. Khalaf*, 116 F.Supp.2d 210, 215 (D. Mass. 1999) ("Counsel's affirmative misrepresentation regarding the deportation consequences of a guilty plea is unreasonable under prevailing professional norms"); *United States v. Corona–Maldonado*, 46 F.Supp.2d 1171, 1173 (D. Kan. 1999) ("Although an attorney's failure to inform his or her client about the possibility of being deported may not amount to ineffective assistance of counsel, providing incorrect information about being deported following specific inquiry may render the defendant's plea involuntary"); *United States v. Mora–Gomez*, 875 F.Supp. 1208, 1213 (E.D.Va.1995) ("[C]ounsel's affirmative misrepresentation regarding the deportation consequences of a guilty plea may, but does not automatically, constitute ineffective assistance"); *United States v. Nagaro–Garbin*, 653 F.Supp. 586, 590 (E.D. Mich. 1987) ("[I]f counsel made affirmative misrepresentations in response to specific inquiry from Defendant, Defendant may have a claim for ineffective assistance of counsel"); t *In re Resendiz*, 25 Cal.4th 230, 240 (2001) ("[A]ffirmative misadvice regarding immigration consequences can in certain circumstances constitute ineffective assistance of counsel"); *People v. Soriano*, 194 Cal.App.3d 1470, 1481(1987) (holding, in a case where securing a sentence of less than one year would have avoided deportation, that a "formulaic warning" about immigration consequences constitutes ineffective assistance of counsel); *People v. Correa*, 108 Ill.2d 541, 552-53 (1985) (concluding that defendant's guilty pleas "were not intelligently and knowingly made and therefore were not voluntary" when counsel provided erroneous and misleading advice in response to specific inquiries concerning deportation consequences); *Williams v. State*, 641 N.E.2d 44, 49 (Ind. App.

1994) (holding that the failure "to advise a noncitizen defendant of the deportation consequences of a guilty plea" constitutes ineffective assistance of counsel); *In re Yim*, 139 Wash.2d 581, 588 (1999) ("[A]n affirmative misrepresentation to a defendant regarding the possibility of deportation might constitute a 'manifest injustice,' and, thus, provide a basis for setting aside a guilty plea").

The court therefore finds that, at the time Abramian's conviction became final, the *Kwan* rule had been indicated, and was merely awaiting a case in which to be pronounced. It was thus not a "new rule" under *Teague*. Cf. *Chaidez*, 133 S.Ct. at 1119 (Sotomayor, J., dissenting) (*Kwan* "merely applied the age-old principle that a lawyer may not affirmatively mislead a client").

### 3. Whether Abramian Has Adequately Alleged That There Were Valid Reasons for Her Delay

The government also seeks dismissal on the basis that Abramian has not alleged facts satisfying the second *Hirabayashi* factor because her petition does not by "provide valid or sound reasons explaining why [she] did not attack [her] sentence[ ] or conviction[ ] earlier." *Kwan*, 407 F.3d at 1012, 1014. A petitioner bears the initial burden of justifying her delay. See *United States v. Riedl*, 496 F.3d 1003, 1007-08 (9th Cir. 2007). *Kwan* – which is the only legally cognizable basis for the petition – was decided nine years ago, on May 12, 2005. Abramian identifies no reason that would explain her failure to attack her sentence at any time following the issuance of *Kwan* prior to March 24, 2014.[18] See *Riedl*, 496 F.3d at 1004 ("[Petitioner] has failed

---

[18] Abramian contends she did not petition at an earlier date because *Padilla* was not decided until March 31, 2010. (Petition at 10.) While the Ninth Circuit has held that a retroactive change in the law provides a valid reason for not attacking a conviction earlier, see *United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989); *Colino v. United States*, No. SACV 11-0904 DOC, 2012 WL 1198446, *9 (C.D. Cal. Apr. 9, 2012) ("'The Ninth Circuit has determined that a recent and fully retroactive change in the law constitutes a valid reason for delay,'" quoting *Martinez v. United States*, 90 F.Supp.2d 1072, 1076 (D. Haw. 2000)), as discussed, *Padilla* was not a retroactive change in the law. To the extent Abramian seeks to attack her sentence under *Kwan* – as she asserts in her opposition – she does not explain why she failed to act after the Ninth Circuit issued *Kwan* in 2005. Abramian attributes her delay following the issuance of *Padilla* to "lack of seeking advi[c]e." (Petition at 11.) While the fact that a petitioner received erroneous legal advice not to pursue relief can constitute reasonable cause for delay, *Riedl*, 496 F.3d at

to provide any valid reasons for waiting so long to challenge her convictions on these grounds, and thus plainly does not satisfy the requirements for the highly unusual remedy of coram nobis relief"); *Maghe v. United States*, 710 F.2d 503, 503–04 (9th Cir. 1983) (affirming the denial of a coram nobis petition as untimely where the claim could have been raised earlier and there were no sound reasons for the delay); *Rianto v. United States*, Nos. 1:11–CV–0217 AWI, 1:01–CR–5063 AWI, 2012 WL 591507, *3 (E.D. Cal. Feb. 22, 2012) ("The court will not speculate at this point as to what Petitioner was actually told or not told. It is up to Petitioner to allege precisely what information was transmitted to him that made it reasonable for him to not take action to challenge the conviction earlier").

Abramian's petition does not articulate why, having been taken into immigration custody in 2003, she did not immediately file a petition for writ of coram nobis after *Kwan* was decided in 2005. Because she does not provide this explanation, she has not satisfied the second *Hirabayashi* factor. *Riedl*, 496 F.3d at 1004. Since a writ of coram nobis is available only where the petitioner has "exercis[ed] due diligence" in bringing her concern promptly to the attention of the courts, *id.* at 1007, her petition for a writ of coram nobis must be denied. Because it is possible that she may be able to explain the delay, however, the court will grant her leave to filed an amended petition that adequately pleads that valid reasons exist for not attacking the conviction under *Kwan* at an earlier point in time. *Rothwell v. California*, No. CIV S–11–0844 DAD P, 2012 WL 423641, *1 (E.D. Cal. Feb. 8, 2012) (noting that the court had previously permitted petitioner to file an amended petition and quoting the prior order, which stated: "[T]he court will grant petitioner leave to file an amended petition, if he so chooses. However, in any amended petition for writ of coram nobis that he elects to file petitioner will need to establish that: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case and controversy requirement

---

1007, Abramian does not state she received such advice; rather, she indicates she neglected to seek advice at all. Moreover, her explanation addresses only the period of time following the *Padilla* decision. It does not address her inaction following issuance of the *Kwan* decision in 2005.

of Article III; and (4) the error suffered is of the most fundamental character"); *Green v. California*, No. CV 09-04958-AHM (VBK), 2010 WL 1576746 (C.D. Cal. Mar. 9, 2010) (noting that the court had dismissed a coram nobis petition with leave to amend).

### III. CONCLUSION

Because Abramian has failed to satisfy the second requirement for coram nobis relief, the court dismisses her petition for writ of error coram nobis with leave to amend. Abramian may file an amended petition within twenty (20) days of the date of this order.

DATED: June 9, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE