1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 02-00945 MMM |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER GRANTING MOTION TO |
| | ) DISMISS DEFENDANT'S PETITION FOR |
| OPHELIA ABRAMIAN, | ) RELIEF PURSUANT TO WRIT OF |
| | ) ERROR CORUM NOBIS AND |
| Defendant. | ) DISMISSING PETITION WITHOUT |
| | ) LEAVE TO AMEND |
| | ) |
| | ) |

12
13
14
15
16
17
18

**I. FACTUAL AND PROCEDURAL BACKGROUND**

19
20

On October 28, 2002, Abramian pleaded guilty to five counts of bank fraud in violation

21

of 18 U.S.C. § 1344.[1]  On February 3, 2003, she was sentenced to five months in custody, which

22

was a time served sentence, five months of home detention, and three years of supervised release.

23

She was also ordered to pay $18,997.49 in restitution and a $100 special assessment.[2]  On March

24

24, 2014, Abramian filed a petition for writ of error coram nobis.  On April 25, 2014, the

25

---

26
27

[1]Minutes of Change of Plea Hearing, Docket No. 23 (Oct. 28, 2002); Petition for Writ of Error Coram Nobis, Docket No. 33 (Mar. 24, 2014) at 2.

28

[2]Minutes of Sentencing, Docket No. 27 (Feb. 3, 2003) at 1-2.

government filed a motion to dismiss the petition.[3]  The court granted the government's motion with leave to amend on May 27, 2014,[4] and Abramian filed an amended petition on June 23, 2014.[5]  On September 3, 2014, the government moved to dismiss Abramian's amended petition.[6]  Abramian filed opposition on September 10, 2014.[7]

Ophelia Abramian entered the United States in 1997, and was granted asylum in 1998.[8]  She states that following her sentencing, she was taken into custody by immigration authorities preparatory to removal.[9]  Abramian hired an immigration lawyer, and was released in April 2004.[10]  Her asylum status has now been revoked because her sentence qualifies as an "aggravated felony."[11]

Abramian seeks to vacate her conviction, plead guilty to the same offenses, and be ordered to pay restitution of less than $10,000.[12]  She contends that her criminal attorney violated her Sixth Amendment right to effective assistance of counsel because she was never explicitly advised that if the amount of restitution order was $10,000 or more, the crime would qualify as an aggravated

---

[3]Motion to Dismiss, Docket No. 37 (Apr. 25, 2014).

[4]Minutes of Hearing on Motion to Dismiss, Docket No. 42 (May 27, 2014); Order Granting Motion to Dismiss, Docket No. 43 (Jun. 10, 2014).

[5]Amended Petition for Writ of Error Coram Nobis ("Petition"), Docket No. 44 (Jun. 23, 2014).

[6]Motion to Dismiss Amended Petition ("Motion"), Docket No. 53 (Sept. 3, 2014).

[7]Opposition to Motion to Dismiss Amended Petition ("Opposition"), Docket No. 54 (Sept. 10, 2014).

[8]Amended Petition at 4.

[9]Amended Declaration of Ophelia Abramian ("Abramian Decl."), Docket No. 45 (Jun. 23, 2014) at 2.

[10]*Id.*

[11]*Id.*

[12]Petition at 3, 6.

2

felony and lead to her removal.[13]  She concedes that she cannot remember exactly what her criminal attorney told her regarding the immigration consequences of her plea; she had the impression, however, that she would be released and placed on home detention with no serious immigration consequences.[14]  Abramian concedes that the court advised her she might be subject to removal or deportation as a consequence of her guilty plea.  Her plea agreement also advised her of this possibility.  She contends, however, that had she known a restitution amount of $10,000 or more would result in her removal, she would have asked her attorney to negotiate a plea to a crime that would not have been classified as an aggravated felony, consulted with an immigration attorney, or gone to trial.[15]

## II. DISCUSSION

### A.  Legal Standard Governing Coram Nobis Petitions

The Supreme Court and the Ninth Circuit have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is available.  In *United States v. Morgan*, 346 U.S. 502, 511 (1954), the Supreme Court characterized the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice."  See also *Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("'[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate,'" quoting *United States v. Smith*, 331 U.S. 469, 475 n. 4 (1947)).  The Ninth Circuit has also described the writ as "extraordinary," *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987), and as a mechanism to be "used only to review errors of the most fundamental character," *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002).

Consistent with the extraordinary nature of coram nobis relief, the *Hirabayashi* court

---

[13]*Id.* at 8; Abramian Decl. at 4.

[14]Abramian Decl. at 3.

[15]*Id.* at 4.

adopted the following framework for deciding when the writ should issue:

> "[A] petitioner must show the following to qualify for coram nobis relief: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi*, 828 F.2d at 604.

See also *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005); *Matus-Leva*, 287 F.3d at 760. Because these requirements are conjunctive, failure to satisfy any one of them is fatal. See, e.g., *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991).

**B.     Whether the Legal Basis for Abramian's Coram Nobis Petition is Cognizable**

The parties' briefs focus primarily on the fourth element of the *Hirabayashi* test. Abramian contends this element is satisfied because the Sixth Amendment right to counsel is a fundamental right, and an attorney's improper characterization of possible immigration consequences is a cognizable basis for asserting ineffective assistance of counsel. In contrast to her original position, Abramian does not assert that the Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010), is retroactive. See *Chaidez v. United States*, 133 S.Ct. 1103, 1109 (2013) (holding that *Padilla* did not have retroactive effect); *Padilla,* 559 U.S. at 376 ("we now hold that counsel must inform her client whether his plea carries a risk of deportation"). Rather, she contends that her attorney provided ineffective assistance of counsel under the Ninth Circuit's decision in *Kwan,* 407 F.3d 1005.

The Sixth Amendment guarantees all criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the right to counsel is the right to the effective assistance of counsel,'" quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). An individual no longer in custody may utilize a petition for writ of coram nobis to attack her conviction on ineffective assistance of counsel grounds. *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). Such an attack satisfies the fundamental error requirement of *Hirabayashi*. See *Kwan*, 407 F.3d at 1014 ("Kwan may satisfy the fundamental error requirement by establishing that he received ineffective assistance of

4

counsel").

In *Kwan*, a 2005 Ninth Circuit decision, the court distinguished an attorney's failure to advise a client of the immigration consequences of a conviction – which was not then a cognizable basis for an ineffective assistance of counsel claim under *Strickland* – from situations in which counsel affirmatively misled a client about the immigration consequences of a conviction.  407 F.3d at 1015.  The court held the latter claim was cognizable under *Strickland*.  *Id.*  Kwok Chee Kwan, a lawful permanent resident, had been indicted on two counts of bank fraud.  *Id.* at 1008. When considering whether to plead guilty, he asked his defense attorney whether doing so would lead to his deportation.  *Id.*  The attorney assured Kwan that although there was a possibility Kwan would be deported, he did not believe, based on his knowledge and experience, that it was a serious possibility.  *Id.* at 1009.  The court found the attorney's conduct objectively unreasonable under *Strickland* because "counsel did not merely refrain from advising Kwan regarding the immigration consequences of his conviction, but, instead, responded to Kwan's specific inquiries regarding the immigration consequences of pleading guilty and purported to have the requisite expertise to advise Kwan on such matters."  *Id.* at 1015.

Based on the analysis set forth in its order dismissing Abramian's first petition for coram nobis, the court will assume that *Kwan* applies retroactively.[16]  The government maintains that Abramian is nonetheless unable to satisfy the fourth *Hirabayashi* element because she neither alleges nor adduces evidence that her attorney affirmatively misadvised her concerning the immigration consequences of the conviction.[17]  The court must agree with the government. Abramian asserts in her opposition that the "totality" of her allegations makes it "probable" that counsel did not analyze correctly the immigration consequences of a restitution amount greater than $10,000, and therefore "less than informed or misinformed" her.[18]  Even in making this argument, Abramian does not unequivocally assert that her attorney gave her incorrect, affirmative

---

[16]Order Granting Motion to Dismiss, Docket No. 43 (Jun. 10, 2014).

[17]Motion at 9-10.

[18]Opposition at 2.

advice regarding the immigration consequences of the conviction.  Certainly, her petition does not allege as much.   It pleads that she was "never explicitly told" that her conviction was an aggravated felony and that she "does not recall exactly what she discussed" about immigration consequences with her attorney.[19]  The declaration she earlier proffered, moreover, suggests there is no reasonable probability that counsel misled her.  There, Abramian states that she "was never explicitly told" that her conviction would be deemed an aggravated felony, and that it was her "impression[ ]" that there would be no serious immigration consequences flowing from her plea.[20]  The fact counsel did not tell Abramian her conviction would be deemed an aggravated felony suggests, if anything, a failure to advise regarding immigration consequences, not affirmatively incorrect advice concerning such consequences.  This is a far different situation than that which confronted the court in *Kwan*.  There, counsel affirmatively misled a client about the immigration consequences of a conviction.   Abramian's "impression" that there would be no adverse immigration consequences does not change this conclusion; she may well have believed no adverse consequences would flow from her conviction precisely because her attorney never informed her of such consequences.  Nor does the fact she cannot "recall exactly what [was] discussed" suffice to justify granting her petition.  Abramian bears the burden of proving that she is entitled to coram nobis relief; if she cannot allege facts that establish her entitlement to such relief, the court must dismiss her petition.[21]  Because Abramian has not pled that her counsel affirmatively misadvised

---

[19]Petition at 4.

[20]Abramian Decl. at 3. See also Opposition at 2.

[21]Indeed, as the government argues, if counsel affirmatively misadvised Abramian of the immigration consequences of her conviction, it is unlikely that she would have forgotten the advice she received, particularly as she was taken into immigration custody immediately after being released from custody.  Since she received a time-served sentence, that must have occurred very shortly after she was sentenced in 2002.  At that time, counsel's "advice" would likely have been fresh in Abramian's mind.   After being detained by immigration authorities so quickly, she contacted counsel.  The court agrees with the government that had Abramian been told that her conviction would have no immigration consequences, that conversation with counsel would have been "memorable."  (Motion at 9-10 n. 3.)  Moreover, the circumstances would likely have caused Abramian to remember in detail and commit to memory for the long term the erroneous

her of the collateral immigration consequences of her guilty plea, she has not satisfied the fourth *Hirobayashi* factor.

### 3. Whether Abramian Has Adequately Alleged That There Were Valid Reasons for Her Delay

The government also seeks dismissal on the basis that Abramian has not alleged facts satisfying the second *Hirabayashi* factor because her petition does not "provide valid or sound reasons explaining why [she] did not attack [her] sentence[ ] or conviction[ ] earlier."[22] *Kwan*, 407 F.3d at 1012, 1014. A petitioner bears the initial burden of justifying her delay. See *United States v. Riedl*, 496 F.3d 1003, 1007-08 (9th Cir. 2007). *Kwan* – which is the only legally cognizable basis for the petition – was decided nine years ago, on May 12, 2005. Abramian provides no valid explanation for her failure to attack her conviction at any time after *Kwan* was decided and prior to March 24, 2014. See *Riedl*, 496 F.3d at 1004 ("[Petitioner] has failed to provide any valid reasons for waiting so long to challenge her convictions on these grounds, and thus plainly does not satisfy the requirements for the highly unusual remedy of coram nobis relief"); *Maghe v. United States*, 710 F.2d 503, 503–04 (9th Cir. 1983) (affirming the denial of a coram nobis petition as untimely where the claim could have been raised earlier and there were no sound reasons for the delay).

Abramian argues her delay is justified because she was advised in late 2007 by new counsel, Arthur Avazian, that his effort to secure the government's consent to a change in Abramian's guilty plea and sentence had been unsuccessful, and that there was no other action he could take at that time.[23] Following this, she contends she sought help from "several other attorneys," all of whom advised that there was no action that could be taken. She contacted

---

advice she allegedly received.

[22]Motion at 10-12.

[23]Petition at 3; see also Abramian Decl., Exh. 2.

current counsel in late 2013, who filed the petition for writ of error coram nobis in March 2014.[24] In essence, she contends that after her criminal attorney provided ineffective assistance, other counsel did as well, and that this justifies her delay. This argument is unpersuasive for two reasons. First, Abramian does not explain why she waited more than four years after she was taken into immigration custody (and thus learned the potential immigration consequences of her plea) to seek advice of counsel concerning the vacation or modification of her criminal conviction. Indeed, even after *Kwan* was decided in 2005, she waited more than two years to challenge her conviction. Because she fails to offer any justification for this delay, the court must dismiss her petition. See *United States v. Njai*, 312 Fed. Appx. 953, 954 (9th Cir. Feb. 25, 2009) (Unpub. Disp.) (concluding that petitioner had not shown that there was a sound reason justifying delay where he waited four years after sustaining a conviction to file coram nobis petition, and stating: "Although Njai entered his plea and was convicted in March 2002, he did not seek coram nobis relief until August 2006, more than four years later. Soon after his conviction, Njai retained new counsel who clearly knew of the collateral consequences of Njai's conviction and could have advised him to seek relief based on the alleged ineffective assistance Njai previously received. Yet Njai does not offer a valid reason for his extensive delay"); *United States v. Graham*, No. C 06-00725 SI, 2014 WL 3372842, *3 (N.D. Cal. July 9, 2014) ("[H]ere, there was at least a three and a half year period of delay where defendant did not seek the advice of counsel. In sum, defendant 'has failed to offer any legitimate explanations for not raising [his] challenges to [his] conviction[ ] sooner or through more usual channels'"(citations omitted)); *Garcia v. United States*, No. CR 97-022 MEJ, 2012 WL 5389908, *7 (N.D. Cal. Nov. 5, 2012) (finding a 15-month delay in filing a coram nobis petition after the Court decided *Padilla* unreasonable); *Quisano v. United States*, No. CIV. 07-00594 JMSBMK, 2008 WL 351210, *4 (D. Haw. Feb. 8, 2008) (concluding a coram nobis petition was untimely where petitioner waited one and a half years after being sentenced to challenge alleged sentencing errors).

Second, even had Abramian acted diligently in seeking legal advice from Avazian, she has

---

[24]Petition at 3; see also Abramian Decl. at 3.

failed to demonstrate that Avazian improperly advised her of the availability of grounds for challenging her conviction.  She proffers a proposed declaration Avazian's legal assistant drafted for her in January 2008, based on a conversation she had had with the legal assistant.  In it, Abramian explains that she "never heard the words aggregated felony" and that her criminal lawyer "never mentioned" that she might be deported.[25]  It therefore appears she did not tell Avazian that her criminal attorney affirmatively misadvised her concerning the immigration consequences of her plea.  See *Rianto v. United States*, Nos. 1:11–CV–0217 AWI, 1:01–CR–5063 AWI, 2012 WL 591507, *3 (E.D. Cal. Feb. 22, 2012) ("The court will not speculate at this point as to what Petitioner was actually told or not told.  It is up to Petitioner to allege precisely what information was transmitted to him that made it reasonable for him to not take action to challenge the conviction earlier").  Because *Padilla* had not yet been decided, and because, when it was, it was not made retroactive, Avazian's conclusion that Abramian had no ability to challenge her conviction appears to have been correct.  Accordingly, his advice does not justify Abramian's delay in seeking coram nobis relief between 2008 and March 24, 2014.[26]

In sum, Abramian waited almost twelve years after the date of her conviction, eleven years after learning that the conviction had immigration consequences, and more than eight years after the Ninth Circuit decided *Kwan* to file a petition for writ of coram nobis.  None of Abramian's explanations reasonably justifies this delay.  Because she has not demonstrated that there are sound reasons for her delay, the court would have to deny her petition even had she alleged that her criminal attorney affirmatively misadvised her, the court would still deny her petition for writ of coram nobis.

---

[25]Abramian Decl., Exh. 1 at 2.

[26]Abramian also asserts that she sought advise from other lawyers that "essentially" gave her the same advise as Avazian.  As noted, based on the information Abramian relayed to Avazian, the advise proffered was not incorrect.  For that reason, because Abramian does not contend she offered any new or different facts to these unidentified attorneys, their advise cannot justify Abramian's delay.

**III. CONCLUSION**

Because Abramian has failed to satisfy the second and fourth requirements for coram nobis relief, the court grants the government's motion to dismiss. Based on the declaration Abramian filed, and her acknowledgment that she cannot state what she was told concerning the immigration consequences of her conviction, the court dismisses the petition without leave to amend.

DATED: September 22, 2014

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE